# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RICHARD MAURICE JARRELL, | : | Case No. 3:19-cv-00349 |
| Plaintiff, | : | |
| | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| ARMY REVIEW BOARD AGENCY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.

Plaintiff Richard Maurice Jarrell served in the United States Army. His brother Stephen Jarrell also served in the United States Army, although his service was brief, and he was discharged in 1971 with an "under than honorable discharge." Over the ensuing years, Plaintiff has assisted Stephen in many ways, including advocating for Stephen in his attempts to convince the Army to upgrade his discharge to a medical discharge. These attempts have been unsuccessful: Defendant Army Review Board Agency—more specifically, the Army Board for Corrections of Military Records[2]—has repeatedly denied Stephen's applications to upgrade his discharge to a medical discharge. As a result, Stephen has not received medical benefits from the Veterans Administration.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] The Army Board for Corrections of Military Records falls under the umbrella of the Army Review Board Agency.

The present case centers on the fact that some of Plaintiff's medical records showed up in support of Stephen's 1988 application to upgrade his Army discharge status.  Plaintiff claims that the release of his medical records, and the Army Board for Corrections of Military Records' reliance on them to deny Stephen's 1988 application, violated the Privacy Act, 5 U.S.C. § 552(a).  Plaintiff alleges that this has caused him an "undue burden" amounting to $1,200,000.00 million dollars in damages.  (Doc. #4, *PageID* #73).

Defendants seek dismissal of Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  (Doc. #10).  Plaintiff opposes dismissal, although he asks the Court to dismiss claims one through four of his Complaint.  (Doc. #14, *PageID* #212).

**II.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...."  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To avoid dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (internal quotation marks and citations

2

omitted). "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).

In the instant case, Plaintiff proceeds *pro se*. His Complaint must therefore "'be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers....'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff relies on several documents attached to his Complaint. The parties have submitted additional documents in support of their Rule 12(b)(6) arguments. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

### III.

Returning to Stephen's brief stint in the Army, his difficulties began when he when he left basic training without leave or, using the familiar military acronym, went AWOL (absent without leave). Stephen alleges that after he returned from going AWOL, he was attacked by his platoon leader. He claims that during the investigation of the attack, he identified his attacker. But the Army concluded otherwise. A letter sent to Stephen's mother concluded, "there was insufficient evidence to substantiate who

committed the assault." *See* Doc. #14, *PageID* #s 246.  At some point, the Army transferred Stephen to a different company.  But he again went AWOL.

After returning from his second AWOL, Stephen faced a court martial for being AWOL from April 17, 1971 to October 27, 1971.  (Doc. #13, *PageID* #184).  Rather than proceeding to court martial, he applied for and received a discharge from the Army.  He consulted with counsel before choosing to apply for discharge.  *See id*. at 178-80.

In 1988 Stephen applied for a correction of his military records, attempting (as mentioned above) to change his discharge status to a medical discharge.  He alleged, among other things, that his company commander planned the attack upon him, let the perpetrator go free, and tampered with his medical records in an attempt to cover-up his (the company commander's) misdeeds.  (Doc. #14, *PageID* #s 229-30).

In 1990 Stephen found new evidence and submitted it in support of his application.  This new evidence included pages from Plaintiff's medical records—"Standard Form 88" (SF 88)—documenting the results of Plaintiff's physical exam upon his separation from the Army.[3]  *Id*. at 239, 241-42.

The Army Board for Corrections of Military Records denied Stephen's application on April 4, 1990.  The Board concluded that Stephen had failed to timely file his application and that he "had not presented and the records do not contain sufficient justification to conclude that it would be in the interest of justice to grant the relief requested or to excuse the failure to file within the time prescribed by law." (Doc. #13,

---

[3] The copy of this form is difficult to read, but it is the one Stephen received from an Army Freedom of Information Officer.  *See* Doc. #13, *PageID* #143.

4

*PageID* #185).

In the present case, Plaintiff relies on information in the Board's decision, page 3, paragraph 3, which states:

> After he [Stephen] returned to military control, charges were preferred against him for being AWOL from 17 April 1971 to 27 October 1971 in violation of Article 86 of the UCMJ. After being advised of his rights he submitted a request for discharge for the good of the service in lieu of trial by court-martial. He stated that he could not adjust to military life and he would go AWOL again if not released. Also he stated that there had been no change in his medical condition since his last examination. The appropriate authority approved his request for discharge ….

(Doc. #4, *PageID* #s 60, 71 (emphasis added); Doc. #13, *PageID* #184). The Board based one of these findings—namely, that Stephen had stated, "there had been no change in his medical condition since his last examination," *id.*—on a document dated December 7, 1971. Stephen acknowledged in this document that there had been no change in his medical condition since his last separation physical exam a month earlier (on November 10, 1971). (Doc. #4, *PageID* #72; Doc. #14, *PageID* #240).

## IV.

In the present case, Plaintiff asks the Court to dismiss his claims under the Privacy Act—*i.e.*, claim one, against Defendant National Personnel Records Center; and claims two, three, and four against Defendant Army Board of Review Agency. Plaintiff reasons, "Defendant has admitted that the SF 88 in Stephen's records is indeed Plaintiff's SF 88 [and] it is felt that the Board will not attempt to use Plaintiff's SF 88 in Stephen's 2016 application." (Doc. #14, *PageID* #212). This refers to Stephen's application for correction to his military record in October 2016. (Doc. #13, *PageID* #s 187-89).

5

Defendants boil down Plaintiff's Complaint to three Counts under the Privacy Act. (Doc. #10, *PageID* #116-17). Given Plaintiff's request to dismiss his claims one through four, his sole remaining claim is claim five (which Defendants' identify as Count III). *Id*. Construing this claim liberally in Plaintiff's favor—especially in light of the arguments he raises in opposition to Defendants' Rule 12(b)(6) Motion—he grounds this claim on the Privacy Act, 5 U.S.C. § 552a(g)(1). Plaintiff alleges that contrary to Army regulations, Stephen did not receive a physical exam after he returned from his second AWOL or upon his Army discharge. Because of this, or so Plaintiff claims, when Defendants denied Stephen's application to upgrade his discharge status on April 4, 1990, it had to alter his medical records to include Plaintiff's discharge physical-exam records. Defendants then relied on Plaintiff's injury-free records to find that there are no medical records documenting Stephen's injuries or medical treatment caused by the assault. *See* Doc. #4, *PageID* #s 60, 71; *see also* Doc #14, *PageID* #216). Plaintiff contends, "The reason the Army failed to give Stephen a discharge physical examination is because the Army knew that the assault on him had caused both physical and mental damage to Stephen." (Doc. #14, *PageID* #216 (internal citation omitted)). Plaintiff further alleges that Defendants willfully tampered with and altered Plaintiff's SF 88 to disguise it as Stephen's SF 88. *See id*. at 218-20.

The Privacy Act provides that an individual may bring a civil action in U.S. District Court "[w]henever any agency … fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or

6

opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual ...." 5 U.S.C. § 552a(g)(1)(C).

Defendants contend that Plaintiff lacks standing to bring a claim under § 552a(g)(1)(C) based on Stephen's inaccurate military records and the resulting denial of Stephen's application to upgrade his discharge status.

The specific section of the Privacy Act Plaintiff invokes, § 552a(g)(1)(C), does not provide him with a civil action based on Defendants' April 4, 1990 denial of his brother Stephen's application to upgrade his discharge status.  Under the plain language of § 552a(g)(1)(C), Plaintiff must allege facts showing that an inaccurate record caused *him* an adverse determination.  Not every individual with inaccurate records kept by an agency may bring a civil action under § 552a(g)(1)(C); only "the individual" with inaccurate records who has suffered an adverse determination may bring a § 552a(g)(1)(C) action.  *E.g., Chambers v. U.S. Dep't of Interior*, 568 F3d 998, 1006-07 (D.C. Cir. 2009) (noting that a plaintiff must show that "he has been aggrieved by an adverse determination" to recover under § 552a(g)(1)(C).

Plaintiff's allegations, when accepted as true and construed in his favor, focus on Defendants' misuse of Plaintiff's altered medical records to deny Stephen's—not Plaintiff's—application to upgrade Stephen's discharge status.  Defendants' denial was adverse to Stephen and concerned his military service and discharge, not Plaintiff's.  Viewing it another way, if Defendants had granted Stephen's application, the resulting benefits would have inured directly to Stephen, not directly to Plaintiff.  And although

7

Plaintiff laudably advocated for and financially supported Stephen over the years, the proximate cause of this expensive endeavor was Plaintiff's voluntary choice to do so rather than Defendants' denial of Stephen's application to upgrade his Army discharge status in April 1990.  *Cf. White v. Stephens*, 13-cv-2173, 2014 WL 726991, at *9 (W.D. Tenn. 2014) ("Prudential standing requires, inter alia, that a litigant assert his or her own legal rights and not rely on the rights or interests of third parties." (citations omitted)), Report & Recommendation adopted, 2014 WL 763355, at *1 (W.D. Tenn. 2014)

Accordingly, for the above reasons, Plaintiff's claim under § 552a(g)(1)(C) fails as a matter of law.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (Doc #10) be GRANTED; and
2. The case be terminated on the record of the Court.

May 5, 2020            *s/Sharon L. Ovington*
                                          Sharon L. Ovington
                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).